**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
In re:

CALPINE CORPORATION, ET AL.,

                              Debtors.

----------------------------------------------------------------x
ARISTEIA CAPITAL, L.L.C.,
AURELIUS CAPITAL MANAGEMENT, L.P.,
DRAWBRIDGE SPECIAL OPPORTUNITIES
ADVISORS LLC, ORE HILL HUB FUND LTD.,
NISSWA MASTER FUND LTD., PINES EDGE
VALUE INVESTORS LTD., PINES EDGE
VALUE INVESTORS L.P., SILVER SANDS
FUND LLC , STARK MASTER FUND LTD.
AND 3V CAPITAL MANAGEMENT, LLC,

                              Plaintiffs,

                           -against-

CALPINE CORPORATION AND ITS
AFFILIATED DEBTORS AND DEBTORS
IN POSSESSION,

                              Defendant.
----------------------------------------------------------------x

Chapter 11

Case No. 05-60200 (BRL)

(Jointly Administered)

Civil Case No.  07-CV-8493 (JGK)

```
------------------------------------------------------------x
BRENCOURT CREDIT OPPORTUNITIES           :
MASTER, LTD., BRENCOURT MULTI-           :
STRATEGY ENHANCED DEDICATED              :
FUND, LP, DILLON READ U.S. FINANCE       :
L.P., DILLON READ FINANCIAL PRODUCTS     :
TRADING LTD., LINDEN CAPITAL L.P.,       :
AND ORE HILL HUB FUND, LTD.,             :
                                         :
                   Plaintiffs,           :
                                         :   Civil Case No. 07-CV-8493 (JGK)
           -against-                     :
                                         :
CALPINE CORPORATION AND ITS              :
AFFILIATED DEBTORS AND DEBTORS           :
IN POSSESSION,                           :
                                         :
                   Defendant.            :
------------------------------------------------------------x
HSBC BANK USA, N.A., AS SUCCESSOR        :
INDENTURE TRUSTEE FOR THE                :
4.75% AND 6.00% CONTINGENT               :
CONVERTIBLE NOTES,                       :
                                         :
                   Plaintiff,            :
                                         :   Civil Case No. 07-CV-8493 (JGK)
           -against-                     :
                                         :
CALPINE CORPORATION AND ITS              :
AFFILIATED DEBTORS AND DEBTORS           :
IN POSSESSION,                           :
                                         :
                   Defendant.            :
------------------------------------------------------------x
```

```
-----------------------------------------------------------------x
MANUFACTURERS AND TRADERS TRUST            :
COMPANY, AS SUCCESSOR INDENTURE            :
TRUSTEE FOR THE 7.75% CONTINGENT           :
CONVERTIBLE NOTES,                         :
                                           :
                         Plaintiff,        :
                                           :   Civil Case No.  07-CV-8493 (JGK)
              -against-                    :
                                           :
CALPINE CORPORATION AND ITS                :
AFFILIATED DEBTORS AND DEBTORS             :
IN POSSESSION,                             :
                                           :
                         Defendant.        :
-----------------------------------------------------------------x
```

**MEMORANDUM OF LAW OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF CALPINE CORPORATION, *ET AL*. IN OPPOSITION TO THE MOTION OF 6% CONVERTIBLE NOTEHOLDERS TO WITHDRAW REFERENCE WITH RESPECT TO DEBTORS' LIMITED OBJECTION**

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

The Official Committee of Unsecured Creditors (the "Creditors' Committee") of Calpine Corporation, et al. (collectively, the "Debtors") hereby submits this memorandum of law in opposition (the "Opposition") to the Motion of 6% Convertible Noteholders to Withdraw Reference With Respect to Debtors' Limited Objection (the "Withdrawal Motion") and accompanying Memorandum of Law in Support of 6% Convertible Noteholders Motion to Withdraw Reference With Respect to Debtors' Limited Objection (the "Memorandum of Law"). In support of this Opposition, the Creditors' Committee respectfully represents as follows:

## PRELIMINARY STATEMENT

By the Withdrawal Motion, the 6% Convertible Noteholders[1] seek to withdraw the reference to the Bankruptcy Court (as defined below) of all matters related to the 6% Noteholders' claims. Specifically, the 6% Convertible Noteholders seek withdrawal of the reference with respect to "all proceedings relating to the amount and related aspects of the 6% Convertible Noteholders' claims and reserving assets on account of such claims pursuant to the [Debtors'] Plan (as defined below) pending such determination". Withdrawal Motion at 2. The 6% Convertible Noteholders do not assert that mandatory withdrawal of the reference is applicable to this dispute but instead rely solely on permissive withdrawal. Because the Withdrawal Motion is neither timely nor ripe and fails to satisfy any of the requirements for permissive withdrawal of the reference, the Withdrawal Motion should not be approved by this Court.

---

[1] The 6% Convertible Noteholders are comprised of Aristeia Capital, L.L.C., Aurelius Capital Management, L.P., Drawbridge Special Opportunities Advisors LLC, Ore Hill Hub Fund Ltd., Nisswa Master Fund Ltd., Pines Edge Value Investors L.P., Silver Sands Fund LLC, Stark Master Fund Ltd. and 3V Capital Management, LLC (collectively, the "6% Convertible Noteholders").

For reasons unknown to the Creditors' Committee, the 6% Convertible Noteholders filed the Withdrawal Motion now -- 2 months *after* (a) the Bankruptcy Court fully adjudicated their claims and (b) the 6% Convertible Noteholders filed with this Court an appeal of the Bankruptcy Court's decision. Indeed, the Bankruptcy Court expunged all of the Convertible Noteholders' (as defined below) claims, other than for principal, pre-petition interest and post-petition interest (if any), in its August 10, 2007 Order Granting Debtors' Limited Objection to Convertible Noteholders Claim Nos. 2404, 2821, 2823, 6247, 6249, 6280, 6299 and 6300 (the "Order"). As a result, there is currently nothing further for any court to decide other than the pending appeal of the Order.

Even if the Withdrawal Motion were timely and ripe (and it is neither), this Court should deny the Withdrawal Motion because it fails to satisfy any of the standards for permissive withdrawal of the reference from the Bankruptcy Court. For the reasons set forth below, the withdrawal of the reference sought by the 6% Convertible Noteholders (a) relates to core matters and (b) would (i) not promote judicial economy, (ii) prevent uniformity of bankruptcy administration and (iii) promote forum shopping, all of which weigh heavily against the relief requested by the Withdrawal Motion. Moreover, granting the relief requested would result in piecemeal litigation of similar issues by both this Court and the Bankruptcy Court and result in additional unnecessary costs to the Debtors' estates. Accordingly, the Withdrawal Motion should be denied.

**RELEVANT BACKGROUND**

Beginning on December 20, 2005, each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

2

On April 26, 2006, the Bankruptcy Court entered an order establishing August 1, 2006 as the bar date (the "Bar Date") for filing proofs of claim against the Debtors. Prior to the Bar Date, the indenture trustees for the Convertible Notes[2] filed proofs of claims asserting claims for principal and interest and other unliquidated amounts. Nearly eight months after the Bar Date had passed, the indenture trustees for the Convertible Notes filed the so-called "supplemental" proofs of claim.

On June 20, 2007, the Debtors filed the Disclosure Statement for the Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code (as amended, the "Disclosure Statement") and the Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code (as amended, the "Plan").

On July 2, 2007, the Debtors filed the Debtors' Motion for Entry of an Order (A) Approving the Adequacy of the Debtors' Disclosure Statement; (B) Approving Solicitation and Notice Procedures with Respect to Confirmation of the Debtors' Proposed Plan of Reorganization; (C) Approving the Form of Various Ballots and Notices in Connection Therewith; and (D) Scheduling Certain Dates with Respect Thereto (the "Motion to Approve Disclosure Statement").

On July 6, 2007, the Debtors filed their Limited Objection to Convertible Noteholder Claim Nos. 2401, 2821, 2823, 6247, 6249, 6280, 6299 and 6300 (the "Objection") requesting that the Bankruptcy Court disallow the claims of the holders of the Convertible Notes (collectively, the "Convertible Noteholders") to the extent they sought amounts beyond principal and interest. The Creditors' Committee filed pleadings in support of the Objection.

---

[2] The 4.75% Contingent Convertible Notes Due 2023, the 6% Contingent Convertible Notes Due 2014, and the 7.75% Contingent Convertible Notes Due 2015 (collectively, the Convertible Notes").

3

On August 8, 2007, the Bankruptcy Court heard oral argument on the Objection and the Bankruptcy Court read into the record its ruling granting the Objection.  On August 10, 2007, the Bankruptcy Court entered the Order.  The Convertible Noteholders appealed the Order to this Court and oral argument on the appeal is currently scheduled for October 15, 2007.

On September 25, 2007, the Bankruptcy Court entered an order granting the Motion to Approve Disclosure Statement.

On October 1, 2007, the 6% Convertible Noteholders filed the Withdrawal Motion and the Memorandum of Law.

On October 4, 2007, certain holders of the 7.75% Contingent Convertible Notes Due 2015 (the "7.75% Convertible Noteholders") filed a joinder to the Withdrawal Motion.[3]  On October 10, 2007, HSBC Bank USA, N.A., as Successor Indenture Trustee for the 4.75% and 6.00% Contingent Convertible Notes ("HSBC") filed a joinder to the Withdrawal Motion.  On October 11, 2007, Manufacturers and Traders Trust Company, As Successor Indenture Trustee for the 7.75% Contingent Convertible Notes ("M&T") filed a joinder to the Withdrawal Motion.[4]

## ARGUMENT

**I.    The Withdrawal Motion is Not Timely and/or Not Ripe for Adjudication**

**A.    The Withdrawal Motion is Not Timely**

As a threshold matter, in order for the Court to consider a motion to withdraw the reference, the motion must have been timely.  See 28 U.S.C. § 157(d)  ("The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own

---

[3] The joining 7.75% Convertible Noteholders are Brencourt Credit Opportunities Master, Ltd., Brencourt Multi-Strategy Enhanced Dedicated Fund, LP, Dillon Read U.S. Finance L.P., Dillon Read Financial Products Trading Ltd., Linden Capital L.P., and Ore Hill Hub Fund, Ltd.

[4] The Creditors' Committee's opposition to the relief requested by the 6% Convertible Noteholders applies equally to the 7.75% Convertible Noteholders, HSBC and M&T.

4

motion or on timely motion of any party, for cause shown.") (emphasis added).  The Withdrawal Motion was not timely filed.

The 6% Convertible Noteholders' argument that the Withdrawal Motion was timely filed rests solely on the fact that it was filed "only a few days after the Bankruptcy Court approved [the Disclosure Statement]."  The Withdrawal Motion, however, has nothing to do with the Disclosure Statement.  Indeed, the 6% Convertible Noteholders' reference to the Disclosure Statement is merely an unpersuasive tactic to establish timeliness.  The substance of the Withdrawal Motion revolves around the Objection.  Moreover, the caption of the Withdrawal Motion references only the Objection which was filed by the Debtors on July 6, 2007.  As noted above, the Objection has been fully adjudicated by the Bankruptcy Court and the Order is now on appeal before this Court.  As such, there simply is no case or controversy regarding the Convertible Noteholders' claims currently pending before the Bankruptcy Court to remove to this Court.

In fact, the 6% Convertible Noteholders have not cited to and cannot cite to any precedent where a request for the withdrawal of the reference was granted after the underlying relief for which withdrawal of the reference was sought had already been adjudicated by the bankruptcy court and appealed to the district court.  Rather, the three cases cited by the 6% Convertible Noteholders in support of the timeliness of the Withdrawal Motion are each distinguishable because the underlying proceedings for which withdrawal of the reference was sought had not yet been adjudicated by the bankruptcy court.  See In re Kentile Floors, Inc., No. 94-8518, 1995 WL 479512 (S.D.N.Y. Aug. 10, 1995) (finding timeliness where adversary proceeding had not been completely adjudicated by the bankruptcy court and proceeding asserted non-core claims and was against entity that had not filed proof of claim in bankruptcy case); In

5

re Texaco, Inc., 84 B.R. 911 (S.D.N.Y. 1988) (finding timeliness where the motion for which movants sought withdrawal of reference had not been adjudicated by the bankruptcy court and movants did not appear to be forum shopping); Interconnect Telephone Services, Inc. v. Farren, 59 B.R. 397 (S.D.N.Y. 1986) (finding timeliness where the action involved a jury trial that could not be conducted in the bankruptcy court).

Courts in this district have uniformly held that courts must employ withdrawal of the reference judiciously in order to prevent it from becoming just another litigation tactic for parties eager to find a way out of bankruptcy court. See In re Kenai Corp., 136 B.R. 59, 61 (S.D.N.Y. 1992). In In re New York Trap Rock Corp., the movant sought withdrawal of the reference only after the bankruptcy court, upon partial adjudication, had made findings adverse to it. 158 B.R. 574, 577 (S.D.N.Y. 1993). The Court held that "[t]o permit an application to withdraw the reference . . . to succeed, when first filed at such a juncture, would reward forum shopping." Id. The Court further reasoned that:

> Forum shopping efforts pursued by awaiting a decision relevant to the merits and then bypassing or filing a motion to transfer should not be awarded with success . . . Timeliness when not governed by a specific timetable is dependent on how parties interact; a short delay in some circumstances may be far more prejudicial than a longer one in others.

158 B.R. at 577; see also Laine v. Gross, 128 B.R. 588, 589 (D. Me. 1991) (finding that a motion to withdraw the reference filed only after the bankruptcy court denied a motion to dismiss was a litigation tactic and did not constitute "action as soon as practicable").

Similar to the movant in New York Trap Rock, the 6% Convertible Noteholders have filed the Withdrawal Motion as a litigation tactic and a means to escape the jurisdiction of the Bankruptcy Court, which they now deem to be unfavorable after the Bankruptcy Court's ruling on the Objection. Such gamesmanship should not be countenanced by this Court.

6

For the foregoing reasons, the Withdrawal Motion should be denied because the relief sought therein was not sought timely.

### B.    The Withdrawal Motion is Not Ripe

The 6% Convertible Noteholders are not clear as to whether they are seeking withdrawal of the reference immediately, as implied in the Withdrawal Motion or, only if this Court reverses the Order, as set forth in the Memorandum of Law.  <u>Compare</u> Withdrawal Motion at 2 (seeking withdrawal of the reference "of all proceedings relating to determining the amount and related aspects of the 6% Convertible Noteholders' claims and reserving assets on account of such claims pursuant to the Plan . . . pending such determination"); Memorandum of Law at 6 ("Accordingly, if this Court reverses the Order, it should exercise its discretion to withdraw the reference by this Court to the Bankruptcy Court of all proceedings relating to determining the amount of the 6% Convertible Noteholders' claims and to set a sufficient reserve on account of such claims pending such determination.").  Regardless of the actual relief sought, the relief requested is not ripe for adjudication by this Court.

The Withdrawal Motion should not be heard by this Court before it rules on the pending appeal.  If this Court affirms the Order, then there will be no claims to liquidate or for which to establish a reserve under the Plan.  Thus, there will be no need for this Court to decide the Withdrawal Motion.  Rather, the Withdrawal Motion will only be ripe in the circumstance that this Court were to reverse the Bankruptcy Court's decision and determine that the Convertible Noteholders have claims (beyond claims for principal, interest and post-petition interest (if any)).

As evidenced by the foregoing, the relief requested in the Withdrawal Motion is not ripe for consideration by this Court.  Accordingly, the Withdrawal Motion should be denied.

## II. The Withdrawal Motion Does Not Satisfy the Multi-factor Test for Permissive Withdrawal of the Reference

In the event that this Court determines to hear the Withdrawal Motion, the Withdrawal Motion should be denied because the 6% Convertible Noteholders are unable to satisfy the multi-factor test utilized in this Circuit for permissive withdrawal of the reference.  See 28 U.S.C. § 157(d).  Section 157(d) of Title 28 of the United States Code provides that "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown."  28 U.S.C. § 157(d).  While section 157 does not define what constitutes "cause shown", the Second Circuit has held that the following factors should be considered to determine whether cause exists for permissive withdrawal of the reference:  (a) whether the claim is core or non-core; (b) what is the most efficient use of judicial resources; (c) what is the delay and what are the costs to the parties; (d) what will promote uniformity of bankruptcy administration; (e) what will prevent forum shopping; and (f) other related factors.  See South Street Seaport Ltd. P'ship v. Burger Boys, Inc. (In re Burger Boys, Inc.), 94 F.3d 755, 762 (2d Cir. 1996); Orion Pictures Corp v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1101 (2d Cir. 1993).  Of the foregoing factors, the Second Circuit gives the greatest weight to whether the issue at hand is a core or non-core proceeding.  Burger Boys, Inc., 94 F.3d at 762; Orion Pictures Corp., 4 F.3d at 1101.  Indeed, where a party seeks to withdraw the reference with respect to a core proceeding, at least one court has stated that "as a practical matter it [would be] difficult to envision a situation when this would be appropriate."  In re Baldwin-United Corp., 57 B.R. 751, 756 (S.D. Ohio 1985).  Here, the 6% Convertible Noteholders cannot satisfy any of the factors for permissive withdrawal of the reference.

First, the two issues for which the 6% Convertible Noteholders seek withdrawal of the reference -- the liquidation of their claims and the determination of the amount of their claims for purposes of establishing a reserve under the Plan -- both concern core matters. Section 157(b)(2) specifically provides that "allowance or disallowance of claims against the estate . . . and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12 or 13 of title 11" and "confirmations of plans" are core matters. 28 U.S.C. § 157(b)(2). Given the express wording of the statute, there simply is no basis for the 6% Convertible Noteholders' argument that "the determination of the amounts of the 6% Convertible Noteholders' claims is <u>arguably</u> a core matter (emphasis added)." Memorandum of Law, p.13. Moreover, courts in this Circuit routinely hold that the allowance or disallowance of claims against a debtor's estate is a core matter. See <u>In re Manville Forest Products Corporation</u>, 896 F.2d 1384, 1389 (2d Cir. 1990); <u>In re Enron Corp</u>., 2004 WL 3015256, *5 (S.D.N.Y. 2004); <u>In re CBI Holding Co., Inc.</u>, 311 B.R. 350, 362 (Bankr. S.D.N.Y. 2004). Similarly, the 6% Convertible Noteholders' request that this Court estimate their claims for the purpose of establishing a reserve in a manner other than as currently provided in the Plan is a core matter because it is really a disguised objection to confirmation of the Plan. See <u>In re AOV Indus. Inc</u>., 792 F.2d 1140, 1145 (D.C. Cir. 1986) ("The approval of a disclosure statement and confirmation of a reorganization plan are clearly proceedings at the core of bankruptcy law."); <u>In re Best Prods. Co., Inc</u>., 168 B.R. 35, 64 (Bankr. S.D.N.Y. 1994).

Second, it will not be an efficient use of judicial resources to have these claims-related issues decided by this Court. Every other contested claim in the Debtors' chapter 11 cases has been or will be liquidated by the Bankruptcy Court. In connection with the litigation concerning the Objection, Judge Lifland has already reviewed and is familiar with the relevant indentures. If

9

this Court were to reverse the Bankruptcy Court and were to find that the Convertible Noteholders are entitled to allowed claims (other than for principal, interest and post-petition interest (if any)), an evidentiary hearing would have to occur in order for either court to quantify the allowed amount of such claims. The 6% Convertible Noteholders have not provided a single valid reason as to why the quantification of such claims should not be determined in the first instance by the Bankruptcy Court.

The 6% Convertible Noteholders also argue that, if this Court were to reverse the Bankruptcy Court's decision, they will be deprived of due process because there will be no reserve set aside for their claims. This Court, however, has indicated that it will rule on the appeal promptly after oral argument (which is currently scheduled for October 15, 2007). Thus, well before the commencement of the confirmation hearing, this Court's decision will be known. If this Court were to determine that the Convertible Noteholders have claims in addition to principal and interest, those claims will no longer be claims "expunged from the Claims Register" which "shall be deemed estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court." See Plan, Article VI.C. Contrary to the assertions by the 6% Convertible Noteholders, the Bankruptcy Court and the Debtors would not ignore this Court's decision allowing such additional claims. In such circumstance, either by agreement among the parties or under Bankruptcy Code section 502(c) by order of the Bankruptcy Court, an appropriate reserve would be established under the Plan for such claims pending the final quantification thereof.

Third, because the reserve provision in the Plan affects all similarly situated creditors equally, it would neither be judicially efficient nor promote uniformity of bankruptcy administration for this Court to decide issues concerning the reserve for the Convertible Noteholders' alleged claims while issues concerning the reserve for all other claims are decided

10

by the Bankruptcy Court. Regardless of whether this Court reverses the Bankruptcy Court's decision on appeal, the Convertible Noteholders may still object to confirmation of the Plan. Objections to confirmation of the Plan are not due until November 30, 2007. If the Convertible Noteholders believe that the Plan's failure to provide an adequate reserve for their claims will deprive them of recoveries on account of such claims or due process, or constitutes an impermissible taking of their property, the appropriate remedy is for them to object to confirmation of the Plan. The Convertible Noteholders are attempting to circumvent the normal confirmation process through the Withdrawal Motion. Moreover, it is virtually certain that other creditors will be objecting to the provisions of the Plan concerning the reserve because they objected to it at the Disclosure Statement. See Transcript of September 25, 2007 Hearing (Exhibit C to the Memorandum of Law), p. 134-135 (Objection of CalGen Third Lienholders to the reserve). As such, it would not be efficient nor promote uniformity in bankruptcy administration for this Court to rule on a portion of the Convertible Noteholders' objection to confirmation of the Plan and for the Bankruptcy Court to handle all other objections to confirmation of the Plan.

Fourth, litigation of the claim and reserve issues on a piecemeal basis before both this Court and the Bankruptcy Court will result in unnecessary and undue costs to the Debtors' estates. Finally, by filing the Withdrawal Motion after the Bankruptcy Court issued the Order and while the appeal of that decision is pending, it appears that the Convertible Noteholders are simply forum shopping, hoping that this Court will look more favorably on their late-filed, meritless claims than the Bankruptcy Court.

In summary, the issues that the 6% Convertible Noteholders seek to be determined by this Court are core matters which should be decided by the Bankruptcy Court in the first instance.

Judicial efficiency and the uniformity of bankruptcy administration will be best served by having the issues decided by the Bankruptcy Court, which will likely result in the avoidance of unnecessary costs to the Debtors' estates and any concerns about forum shopping. Accordingly, the Withdrawal Motion should be denied.

## CONCLUSION

For all of the reasons stated above, the Creditors' Committee respectfully requests that this Court (i) deny the Withdrawal Motion and (ii) grant the Creditors' Committee such other relief as is just, proper and equitable.

Dated: October 12, 2007
      New York, New York

**AKIN GUMP STRAUSS HAUER & FELD LLP**

By: /s/ Lisa G. Beckerman
Michael S. Stamer (MS-4900)
Lisa G. Beckerman (LB-9655)
Philip C. Dublin (PD-4919)
Abid Qureshi (AQ-4882)
590 Madison Avenue
New York, New York 10022-2524
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)

Counsel to the Official Committee of Unsecured Creditors of Calpine Corporation, et al.