Brad Eric Scheler (BS-8019)
Gary Kaplan (GK-4542)
Michael de Leeuw (MD-8479)
Adrian Feldman (AF-2478)
FRIED, FRANK, HARRIS, SHRIVER
& JACOBSON LLP
One New York Plaza
New York, New York 10004
Telephone: (212) 859-8000
Facsimile: (212) 859-4000

*Counsel for the Official Committee of Equity Security Holders*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| CALPINE CORPORATION, ET AL., | : | Case No. 05-60200 (BRL) |
| | : | |
| Debtors. | : | (Jointly Administered) |

------------------------------------------------------------------------x

| | | |
|---|---|---|
| ARISTEIA CAPITAL, L.L.C., AURELIUS CAPITAL MANAGEMENT, LP, DRAWBRIDGE SPECIAL OPPORTUNITIES ADVISORS LLC, ORE HILL HUB FUND LTD., NISSWA MASTER FUND LTD., PINES EDGE VALUE INVESTORS LTD., PINES EDGE VALUE INVESTORS L.P., SILVER SANDS FUND LLC, STARK MASTER FUND LTD. AND 3V CAPITAL MANAGEMENT, LLC, | : | Civil Case No. 1:07-cv-08493 (JGK) |
| Plaintiffs, | : | |
| - against - | : | |
| CALPINE CORPORATION AND ITS AFFILIATED DEBTORS AND DEBTORS IN POSSESSION, | : | |
| Defendant. | : | |

------------------------------------------------------------------------x

**MEMORANDUM OF LAW OF THE OFFICIAL COMMITTEE OF EQUITY
SECURITY HOLDERS IN OPPOSITION TO THE MOTION TO WITHDRAW
<u>REFERENCE WITH RESPECT TO DEBTORS' LIMITED OBJECTION</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................2

STATEMENT OF FACTS ..........................................................................................................3

ARGUMENT..................................................................................................................................6

    I.      The Withdrawal Motion Fails to Meet the Statutory Requirements of 28 U.S.C. § 157(d) ..................................................................................................6

           A.    Movants Cannot Show Cause for Withdrawal of the Reference .................7

                  1.    This Matter is Core and Should Be Determined by the Bankruptcy Court..............................................................................8

                  2.    Judicial Efficiency Dictates Denial of the Withdrawal Motion.........................................................................................9

                  3.    Denial of the Withdrawal Motion Will Promote Uniformity of Bankruptcy Administration ........................................................11

                  4.    Denial of the Withdrawal Motion Will Prevent Forum Shopping .......................................................................................11

                  5.    No Other Over-riding Considerations Warrant Removal ..............12

           B.    The Withdrawal Motion is Untimely.........................................................13

CONCLUSION.............................................................................................................................15

# **TABLE OF AUTHORITIES**

## **FEDERAL CASES**

*In re Baldwin-United Corp.*, 57 B.R. 751 (S.D. Ohio 1985) .............................................. 14

*Buena Vista Television v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 307 B.R. 404 (Bankr. S.D.N.Y. 2004) ..................................................... 8, 12

*In re Chateaugay Corp.*, 104 B.R. 622 (S.D.N.Y. 1989) ................................................... 14

*Cohen v. National Union Fire Insurance Co. of Pittsburgh, PA. (In re County Seat Stores, Inc.)*, No. 01 Civ. 2966, 2002 WL 141875 (S.D.N.Y. Jan. 31, 2002) ...................................................................................................................... 8

*Drew v. Worldcom, Inc. (In re Worldcom, Inc.)*, No. 06 Civ. 3407, 2006 WL 2129309, at *3 (S.D.N.Y. July 26, 2006) ................................................................. 12

*Hunnicutt Co. v. TJX Cos. (In re Ames Department Stores, Inc.)*, 190 B.R. 157 (S.D.N.Y. 1995) ....................................................................................................... 10

*Keene Corp. v. Williams Bailey & Wesner, L.L.P. (In re Keene Corp.)*, 182 B.R. 379 (S.D.N.Y. 1995) .............................................................................................. 8

*Lesser v. A-Z Associates (In re Lion Capital Group)*, 63 B.R. 199 (S.D.N.Y. 1985) ................................................................................................................... 10

*Lone Star Industrial, Inc. v. Rankin County Econ. Development District (In re New York Trap Rock Corp.)*, 158 B.R. 574 (S.D.N.Y. 1993) ..................................... 12

*Official Committee of Asbestos Claimants v. Bennett (In re G-I Holdings, Inc.)*, 295 B.R. 211 (D. N.J. 2003) ......................................................................................... 9, 10

*Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095 (2d Cir. 1993) ........................................................................................ 7, 8

*Schneider v. Riddick III (In re Formica Corp.)*, 305 B.R. 147 (S.D.N.Y. 2004) ............. 12

*South St. Seaport Ltd. P'ship v. Burger Boys, Inc. (In re Burger Boys, Inc.)*, 94 F.3d 755 (2d Cir. 1996) ................................................................................................ 7

*Statutory Committee of Unsecured Creditors v. Motorola, Inc. (In re Iridium Operating LLC)*, 285 B.R. 822 (S.D.N.Y. 2002) ..................................................... 11, 12

*In re Texaco Inc.*, 84 B.R. 911 (S.D.N.Y. 1988) ................................................................ 14

*Travelers Casualty Surety Co. v. Skinner Engine Co. (In re America Capital Equipment, LLC)*, 325 B.R. 372 (W.D. Pa. 2005) (citing NDEP Corp. v. Handl-It, Inc. (In re NDEP Corp.), 203 B.R. 905, 907 (D. Del. 1996)) ...................... 7, 8

*U.S. v. Kaplan*, 146 B.R. 500 (D. Mass. 1992) ................................................................ 14

## FEDERAL STATUTES

28 U.S.C. § 157(a) ..................................................................................................... 2, 6

28 U.S.C. § 157(b)(2)(B) ................................................................................................ 8

28 U.S.C. § 157(d) .................................................................................................. 2, 6, 7

The Official Committee of Equity Security Holders (the "Equity Committee") of Calpine Corporation ("Calpine") and its affiliated debtors and debtors in possession (collectively, the "Debtors") respectfully submits this memorandum of law in opposition to the (i) Motion to Withdraw the Reference with Respect to Debtors' Limited Objection (the "Motion") and the corresponding Memorandum of Law in Support of the Motion ("Memorandum," with the Motion, collectively, the "Withdrawal Motion"), dated October 1, 2007, by Aristeia Capital, L.L.C., Aurelius Capital Management, LP, Drawbridge Special Opportunities Advisors LLC, Ore Hill Hub Fund Ltd., Nisswa Master Fund Ltd., Pines Edge Value Investors Ltd., Pines Edge Value Investors L.P., Silver Sands Fund LLC, Stark Master Fund Ltd. and 3V Capital Management LLC (collectively, the "6% Notes Committee"), (ii) Joinder to the Withdrawal Motion, dated October 4, 2007 (the "7.75% Joinder"), by Brencourt Credit Opportunities Master, Ltd., Brencourt MultiStrategy Enhanced Dedicated Fund, LP, Dillon Read U.S. Finance L.P., Dillon Read Financial Products Trading Ltd., Linden Capital L.P. and Ore Hill Hub Fund, Ltd. (collectively, the "7.75% Notes Committee"), (iii) Joinder to the Withdrawal Motion, dated October 10, 2007 (the "HSBC Joinder"), by HSBC Bank USA, N.A., as successor indenture trustee on behalf of the holders or the 6% Contingent Convertible Notes due 2014 and the holders of the 4.75% Contingent Convertible Notes due 2023 ("HSBC"), and (iv) Joinder to the Withdrawal Motion, dated October 11, 2007 (the "M&T Joinder," with the 7.75% Joinder, the "Joinder"), by Manufacturers and Traders Trust Company, as successor indenture trustee for the holders of the 7.75% Contingent Convertible Notes due 2015 ("M&T," with the 7.75% Notes Committee, the 6% Notes Committee and HSBC, the "Movants").

**PRELIMINARY STATEMENT**

The Withdrawal Motion should be denied because Movants have failed to show cause for withdrawal of the reference and because their request is untimely.

With respect to whether cause exists to withdraw the reference, Movants do not contest that claims estimation and the establishment of an appropriate reserve are "core" bankruptcy matters, that, by the very language of 28 U.S.C. § 157(a), are best left to the discretion of the Bankruptcy Court.[1]  Further, Movants fail to demonstrate that the District Court is any better positioned than the Bankruptcy Court to determine such issues given the facts of this case.

In fact, the only reason Movants give as "cause" to withdraw the reference is that there may not be a meaningful opportunity for appellate review of a subsequent Bankruptcy Court decision in favor of the Debtors.  The risk of mootness raised by Movants, however, is dependant on a number of hypothetical and unlikely scenarios: (i) this Court would have to overturn the Bankruptcy Court's decision, (ii) the Bankruptcy Court would then have to find again that Movants are not entitled to their claims for breach of conversion rights (the "Conversion Damages Claims"), and (iii) the Bankruptcy Court would have to permit the Debtors to reserve nothing in the Debtors' reorganization plan on account of the claims.  All of this could be avoided very simply by any decision remanding the matter to the Bankruptcy Court.  Thus, it appears that Movants are not really concerned about preservation of appellate rights, but are seeking a forum that they presume will be more amenable to the Conversion Damages Claims.

Beyond forum shopping concerns, the Withdrawal Motion must be denied as untimely.  It is well established that, under section 157(d), a party seeking discretionary withdrawal of the reference must seek such relief at the first reasonable opportunity.  Here, the Debtors filed an

---

[1]   References to the Bankruptcy Court are to the Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

2

objection (the "Objection") challenging Movants' Conversion Damages Claims on July 6, 2007. However, rather than making a timely motion for withdrawal at that time, Movants responded to the Objection, litigated the matter before the Bankruptcy Court and lost. Now, three months later and well after the opportunity for a timely motion has passed, they have come to this Court seeking withdrawal as a way to obtain a second bite at the apple. Accordingly, the Withdrawal Motion should be denied as untimely.

For these reasons and those set forth herein, the Equity Committee respectfully requests this Court deny Movants' Withdrawal Motion.

## STATEMENT OF FACTS

Prior to the commencement of the Debtors' bankruptcy cases, Calpine issued four series of unsecured convertible notes (the "Notes").[2] On December 20, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the United States Code (the "Bankruptcy Code"). As of the Petition Date, the Notes were outstanding in the aggregate principal amount of approximately $1.8 billion.

By order dated April 26, 2006, the Bankruptcy Court set the date of August 1, 2006 as the last date to file claims in the Debtors' bankruptcy case (the "Bar Date"). Prior to the Bar Date, Wilmington Trust Co. ("Wilmington Trust"), as Indenture Trustee for the holders of the 7.75% Notes, filed Claim 2404 asserting claims for (a) principal and interest and (b) other unliquidated

---

[2] The Notes include: (a) the $1,311,000 4.00% Convertible Senior Notes Due December 26, 2006 (the "4% Notes"), issued by Calpine pursuant to that certain Indenture, dated as of August 10, 2000 (the "Original Indenture" and, as supplemented by the First Supplemental Indenture, dated as of September 28, 2000, the Second Supplemental Indenture, dated as of September 30, 2004, and the Third Supplemental Indenture, dated as of June 23, 2005, the "Indenture"); (b) the $547,370,000 6.00% Contingent Convertible Senior Notes Due 2014 (the "6% Notes"), issued by Calpine pursuant to the Indenture; (c) the $650,000,000 7.75% Contingent Convertible Senior Notes Due 2015 (the "7.75% Notes"), issued by Calpine pursuant to the Indenture; and (d) the $633,775,000 4.75% Contingent Convertible Senior Notes Due 2023 (the "4.75% Notes"), issued by Calpine pursuant to a certain indenture, dated as of November 14, 2003, which was superseded by that certain Amended and Restated Indenture dated as of March 12, 2004.

3

charges on account of the 7.75% Notes ("Claim 2404").  Also prior to the Bar Date, HSBC, as successor Indenture Trustee for the 4% Notes, the 6% Notes and the 4.75% Notes, filed Claims 2821 and 2823 asserting similar claims (with Claim 2404, the "Original Claims").  Between seven and ten months after the Bar Date, M&T, as successor to Wilmington Trust, and HSBC filed Claims 6280, 6299 and 6300 seeking the additional Conversion Damages Claims (with the Original Claims, the "Claims").

On June 20, 2007, the Debtors filed their initial plan of reorganization and disclosure statement.

On July 2, 2007, the Debtors filed their Motion for Entry of an Order (A) Approving the Adequacy of the Debtors' Disclosure Statement; (B) Approving Solicitation and Notice Procedures with Respect to Confirmation of the Debtors' Proposed Plan of Reorganization; (C) Approving the Form of Various Ballots and Notices in Connection Therewith; and (D) Scheduling Certain Dates with Respect Thereto (the "Disclosure Statement Motion").

On July 6, 2007, the Debtors filed their Objection.  Between July 27, 2007 and July 30, 2007, (i) the 6% Notes Committee, (ii) 7.75% Notes Committee, (iii) M&T, and (iv) HSBC filed responses (the "Responses") to the Objection asserting entitlement to damages based upon an alleged breach of the certain conversion rights (i.e., the Conversion Damages Claims).

On July 27, 2007, the Official Committee of Unsecured Creditors (the "Creditors' Committee") filed a statement in support of the Debtor's Objection, and on August 6, 2007, the Creditors' Committee and the Debtors filed omnibus replies to the Responses and the Equity Committee filed a response in support of the Debtors' Objection.

On August 8, 2007, the Bankruptcy Court held a hearing on the Objection and Responses and made an oral ruling denying the Conversion Damages Claims (the "Bench Decision").  On

4

August 10, 2007, the Bankruptcy Court entered an order, pursuant to its Bench Decision (the "Order"),[3] denying the Claims to the extent they sought amounts over and above "outstanding principal, plus accrued interest as a rate to be determined by the Court at the end of the Chapter 11 Cases and reasonable pre-petition indenture trustee fees as provided under the Indentures." Kaplan Declaration, Ex. A, Order at 2.

On or about August 14, 2007 through August 16, 2007, the 6% Notes Committee, the 7.75% Notes Committee, M&T and HSBC each filed a notice of appeal of the Order. By order dated August 22, 2007, this Court granted expedited consideration of the appeal and established an expedited appeal schedule. The issues on appeal have since been fully briefed and oral argument on the appeal is scheduled for October 15, 2007.

On August 27, 2007 the Debtors filed their first amended plan and their first amended disclosure statement (the "First Amended Disclosure Statement").

On or about September 13, 2007 through September 14, 2007, the 6% Notes Committee, the 7.75% Notes Committee, HSBC and M&T filed their respective objections to the First Amended Disclosure Statement.

On September 18, 2007, the Debtors filed their second amended plan and second amended disclosure statement. On September 24, 2007, the Debtors filed their third amended plan and third amended disclosure statement.

On September 25, 2007, the Bankruptcy Court held a hearing on and approved the Disclosure Statement Motion, and on September 26, 2007, the Bankruptcy Court entered an order approving the Debtors' disclosure statement.

---

[3] The Order is attached as Exhibit A to the Declaration of Gary L. Kaplan (the "Kaplan Declaration") filed simultaneously herewith.

On September 27, 2007, the Debtors' filed their fourth amended plan (the "Plan") and fourth amended disclosure statement (the "Disclosure Statement").

On October 1, 2007, the 6% Notes Committee filed the Withdrawal Motion with the Bankruptcy Court seeking the withdrawal of the reference by this Court to the Bankruptcy Court of "all proceedings relating to determining the amount and related aspects of the [Movants'] claims and reserving assets on account of such claims pursuant to the Plan." Withdrawal Motion at 2. Between October 4, 2007 through October 11, 2007, the 7.75% Notes Committee, HSBC and M&T, respectively, filed the 7.75% Joinder, HSBC Joinder and M&T Joinder with this Court. By order dated October 9, 2007, this Court set the date of October 12, 2007 as the date on which responses to the Withdrawal Motion are due. No hearing has yet been set with respect to the Withdrawal Motion.

## ARGUMENT

### I. The Withdrawal Motion Fails to Meet the Statutory Requirements of 28 U.S.C. § 157(d)

Pursuant to 28 U.S.C. § 157(a), this Court has the authority to refer to the Bankruptcy Court all proceedings "arising under," "arising in," or "related to" the Bankruptcy Code. 28 U.S.C. § 157(a). In the Southern District of New York, any and all bankruptcy cases, or proceedings related to bankruptcy cases, are automatically "referred to the bankruptcy judges for this district" pursuant to a standing order. See Kaplan Declaration, Ex. B, Standing Order of Referral of Bankruptcy Cases in the Southern District of New York dated July 10, 1984 (Acting Chief Judge Robert J. Ward). This Court, however, has the authority to withdraw this "automatic" reference pursuant to 28 U.S.C. § 157(d) which provides:

> The district court ***may*** withdraw, in whole or in part, any case or proceeding under this section, on its own motion or on timely motion of any party, for cause shown.

6

28 U.S.C. § 157(d) (emphasis added).[4]

By the plain language of the statute, where a party by motion seeks discretionary withdrawal, a district court need only consider (i) whether there is *cause* for withdrawal, and (ii) whether the motion is *timely*.

          A.      Movants Cannot Show Cause for Withdrawal of the Reference

Movants, as parties seeking discretionary withdrawal, have the burden to show that "cause" exists under section 157(d). Travelers Cas. Surety Co. v. Skinner Engine Co. (In re Am. Capital Equip., LLC), 325 B.R. 372, 375 (W.D. Pa. 2005) (citing NDEP Corp. v. Handl-It, Inc. (In re NDEP Corp.), 203 B.R. 905, 907 (D. Del. 1996)). Although cause is "a term which § 157(d) does not define," courts have articulated several factors that must be weighed in making a determination whether there is "cause" to withdraw the reference:

> (1) whether the claim is core or non-core, (2) what is the most efficient use of judicial resources, (3) what is the delay and what are the costs to the parties, (4) what will promote uniformity of bankruptcy administration, (5) what will prevent forum shopping, and (6) other related factors.

South St. Seaport Ltd. P'ship v. Burger Boys, Inc. (In re Burger Boys, Inc.), 94 F.3d 755, 762 (2d Cir. 1996) (citations omitted); see also Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1101 (2d Cir. 1993) (stating that in evaluating "cause" courts will consider "whether the claim or proceeding is core or non-core, whether it is legal or equitable, and considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law") (citations omitted). Applying these factors to the facts and circumstances underlying the Withdrawal Motion, Movants cannot sustain a showing of cause and, therefore, their Withdrawal Motion should be denied.

---

[4]    28 U.S.C. § 157(d) also provides for mandatory withdrawal under certain circumstances, but Movants have conceded that only discretionary withdrawal relief is at issue in this case.

7

          1.      <u>This Matter is Core and Should Be Determined by the Bankruptcy Court</u>

      The threshold issue for this Court to determine is "whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn." <u>In re Orion Pictures Corp.</u>, 4 F.3d at 1101; <u>Cohen v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA. (In re County Seat Stores, Inc.)</u>, No. 01 Civ. 2966, 2002 WL 141875, at *4 (S.D.N.Y. Jan. 31, 2002) (J. Koeltl) (denying a motion to withdraw the reference for failure to establish cause). A proceeding is "core" if "it is a proceeding that, by nature, could arise only in the context of a bankruptcy case." <u>Keene Corp. v. Williams Bailey & Wesner, L.L.P. (In re Keene Corp.)</u>, 182 B.R. 379, 382 (S.D.N.Y. 1995); <u>see</u> <u>also</u> <u>In re Am. Capital Equip., LLC</u>, 325 B.R. at 377 (noting that a matter is core if "the rights being adjudicated 'would not exist independent of a bankruptcy environment'") (citations omitted). While the "fact that a claim is core does not necessarily decide the withdrawal analysis… it does strongly suggest that there is no cause to withdraw the reference." <u>In re County Seat Stores, Inc.</u>, 2002 WL 141875, at *6 (J. Koeltl) (noting that withdrawal would have the effect of losing "the advantage of [the bankruptcy court's] views" on the dispute sought to be withdrawn).

      Here, Movants seek to withdraw a "core" matter – estimation of the Conversion Damages Claims and establishment of a reserve in the Debtors' Plan for the amount of such claims. Movants make no argument that these matters are non-core, and section 157(d) specifies that the "estimation of claims or interests for the purposes of confirming a plan" are "[c]ore proceedings." 28 U.S.C. § 157(b)(2)(B); <u>see</u> <u>also</u> <u>Buena Vista Television v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)</u>, 307 B.R. 404, 425 (Bankr. S.D.N.Y. 2004) ("an adversary proceeding against a debtor to establish a post-petition claim, especially with the priority over other creditors that would be sought in connection with its allowance, presents a

core issue"); Official Comm. of Asbestos Claimants v. Bennett (In re G-I Holdings, Inc.), 295 B.R. 211, 218-19 (D. N.J. 2003) (holding that the estimation of asbestos claims "for purposes of determining voting shares in the chapter 11 plan confirmation process" was a "core proceeding that should be determined by the Bankruptcy Court"). Further, the Order granting the Debtors' Objection to the Conversion Damages Claims found that the matter was a core proceeding and Movants have not challenged that finding. Kaplan Declaration, Ex. A, Order at 1.

While not dispositive, the fact that the matter is a core bankruptcy matter weighs heavily against allowance of the relief Movants seek. Such matters are core to the bankruptcy process and, absent a compelling reason for removal from the Bankruptcy Court's purview, which does not exist here, should remain in the Bankruptcy Court.

2. Judicial Efficiency Dictates Denial of the Withdrawal Motion

Judicial efficiency and consistency factors weigh in favor of denial of the Withdrawal Motion. The Bankruptcy Court has overseen the Debtors' bankruptcy cases for nearly two years and has developed an in-depth knowledge of matters that have arisen in the context of these cases. Movants fail to articulate a sufficient reason why, in the event that the Bankruptcy Court's Order is reversed, the Bankruptcy Court should not, in the first instance, estimate the Conversion Damages Claims and determine an appropriate reserve should this Court reverse the Order on appeal. See In re G-I Holdings, Inc., 295 B.R. at 219. "Given its understanding of the facts and issues in this case, and knowledge of the chapter 11 reorganization process, the Bankruptcy Court should attempt the estimation proceeding in the first instance." Id. at 220 (denying motion to withdraw the reference of a claims estimation proceeding where movants had failed to offer a reason "why the Bankruptcy Court with over 24 months experience in this mass tort case should not" render a decision). Certainly judicial efficiency would be served by maintaining the Bankruptcy Court's discretion over such matters.

9

By contrast, withdrawal of the estimation of the Conversion Damages Claims and the attendant issues with respect to a reserve would create confusion and inconsistency. Id. at 219. There are hundreds, if not thousands, of claimants with disputed claims against the Debtors. As part of the Plan process, the Bankruptcy Court will have to determine whether reserves should be established, when the reserves can be released and a procedure for estimating claims. There is no reason that these issues for this one claim should be dealt with by this Court while all other issues should be dealt with by the Bankruptcy Court. Thus, "efficient administration will be hindered rather than furthered" by withdrawal of the reference. Lesser v. A-Z Assocs. (In re Lion Capital Group), 63 B.R. 199, 208 (S.D.N.Y. 1985) (denying several motions to withdraw the reference with respect to adversary proceedings commenced in bankruptcy court related to several actions in district court); see also Hunnicutt Co. v. TJX Cos. (In re Ames Dep't Stores, Inc.), 190 B.R. 157, 163 (S.D.N.Y. 1995) (J. Koeltl) (noting that where the bankruptcy court had been fully briefed and was intimately aware of the issues involved in the adversary proceeding before it, it was best positioned to adjudicate matters involved in the adversary proceeding).

Finally, the Bankruptcy Court has specialized knowledge that will better enable it to determine the issues on remand should this Court reverse on appeal. While Movants argue that the issue in dispute is the valuation of an option, which is something that this Court routinely addresses, Movants ignore the numerous bankruptcy aspects of the dispute. At issue are whether the claims filed by Movants were time barred, and if not time barred, whether there is a cognizable claim under the Bankruptcy Code, and if so, whether the Bankruptcy Code subordinates the claim to other claims or to common stock. All of these pure bankruptcy issues would have to be addressed by this Court were it to withdraw the reference. Movants cannot credibly argue that this is a simple breach of contract dispute commonly resolved by this Court.

As a court specialized in the application of bankruptcy law, the Bankruptcy Court is better positioned to initially determine such issues.

### 3. Denial of the Withdrawal Motion Will Promote Uniformity of Bankruptcy Administration

Uniformity of bankruptcy administration also weighs in favor of disallowance of the Withdrawal Motion. The Bankruptcy Court is familiar with the Plan process and the "special issues" relating to the establishment of a reserve in the Plan. Statutory Comm. of Unsecured Creditors v. Motorola, Inc. (In re Iridium Operating LLC), 285 B.R. 822, 834 (S.D.N.Y. 2002). In fact, there are hundreds of claims for which a reserve will need to be set in the Plan. Inconsistent determinations on setting a Plan reserve could potentially lead to disparate treatment amongst holders of disputed or un-liquidated claims. The Bankruptcy Court's oversight into the Plan reserve process, therefore, is fundamental to ensuring uniformity in dealing with these claim reserve issues. Accordingly, the "consistent administration of bankruptcy law would best be served" by having the Bankruptcy Court determine the estimation of the Claims and attendant issues with respect to a Plan reserve. Id. at 835.

### 4. Denial of the Withdrawal Motion Will Prevent Forum Shopping

This Court should deny Movants' Withdrawal Motion because Movants' request is a veiled attempt to "shop" for a forum more amenable to their position. Without knowing a party's true intent in filing a motion to withdraw the reference, suspicious timing and circumstances surrounding the filing of such a motion can reflect a "strong inference" that movants are attempting to seek "a more favorable forum for litigation of the substantive motions currently pending in the [b]ankruptcy [c]ourt." Drew v. Worldcom, Inc. (In re Worldcom, Inc.), No. 06 Civ. 3407, 2006 WL 2129309, at *3 (S.D.N.Y. July 26, 2006) (J. Koeltl) (denying a motion to withdraw the reference as untimely where such motion was made three weeks after

11

one of the debtors sought to move for summary judgment on an objection to plaintiff's claim); see also Schneider v. Riddick III (In re Formica Corp.), 305 B.R. 147, 151 (S.D.N.Y. 2004) (J. Koeltl) (noting that the filing of a withdrawal motion raised "the specter of forum shopping" because it was filed only after a motion to dismiss movant's complaint against certain directors of the debtors was filed in the bankruptcy court).

      Here, Movants, having subjected themselves "to the equitable jurisdiction of" the Bankruptcy Court by filing their Claims with the Bankruptcy Court, implicitly authorized the Bankruptcy Court to make a determination as to the size of their Claims. In re Adelphia Commc'ns Corp., 307 B.R. at 418; In re Iridium Operating LLC, 285 B.R. at 830 (denying a motion to withdraw a proceeding to allow or disallow a claim). Having received an unfavorable decision by the Bankruptcy Court with respect to their Conversion Damages Claims, they now seek to withdraw such estimation proceedings to this Court. Such circumstances strongly suggest that Movants' true intent is to "shop" for a forum that will be amenable to their position. See Lone Star Indus., Inc. v. Rankin County Econ. Dev. Dist. (In re New York Trap Rock Corp.), 158 B.R. 574, 577 (S.D.N.Y. 1993) (denying a motion to withdraw the reference and transfer an adversary proceeding made just days after the bankruptcy court had entered a decision adverse to the movant). To prevent Movants from being rewarded for such motives, the Withdrawal Motion should be denied.

                5.      <u>No Other Over-riding Considerations Warrant Removal</u>

      While this Court may consider "other factors" in its decision to allow or deny withdrawal, Movants have failed to articulate any legitimate over-riding concern that would warrant withdrawal. Movants' principal argument in favor of withdrawal of the reference is that the Withdrawal Motion must be granted to ensure that their appellate rights are preserved. However, this argument presumes that the Bankruptcy Court will fail to establish a Plan reserve

if this Court overturns the Order – which may not ultimately be the case.  Specifically, Movants assert that if this Court reverses the Bankruptcy Court and the Bankruptcy Court then rules in favor of the Debtors again, the Debtors will not reserve any shares on account of Movants' claims and the Movants' appeal would be rendered moot.  Memorandum at 12-13.  Preservation of appellate rights, however, can be addressed after this Court rules on the appeal, either through instructions to the Bankruptcy Court on remand or through other means.

If the real issue being addressed by Movants was preservation of appellate rights, the Equity Committee would likely not oppose the Motion.  The Equity Committee has very real concerns that the Debtors have created a process designed to ensure that all parties are denied effective appellate review.  The Debtors are seeking to have all disputes addressed at the end of their chapter 11 cases, and they will then seek to have the Plan become effective without providing any party with an opportunity for appellate review.[5]  Here, this Court has ensured that the Movants will have appellate review of the Order disallowing their Conversion Damages Claims, and it has the inherent power to ensure that that further review is preserved in the unlikely event the Bankruptcy Court's Order is reversed.

Thus, despite Movants' contentions, there is no "higher interest" which weighs in favor of withdrawal.

### B. The Withdrawal Motion is Untimely

In addition to there being no cause to withdraw the reference, the Withdrawal Motion is not timely.  While there is no specific time limit for bringing a motion to withdraw the reference, courts have "established a requirement that the motion to withdraw the reference be made at the first reasonable opportunity as evaluated within the specific factual context presented." In re

---

[5] Indeed, the Equity Committee has sought leave to appeal one of the Bankruptcy Court's decisions because it faces the risk of mootness.

13

Chateaugay Corp., 104 B.R. 622, 624 (S.D.N.Y. 1989).  In determining whether the Withdrawal Motion is timely, this Court "must take into consideration the status of and effect such a motion has on the bankruptcy proceedings."  In re Texaco Inc., 84 B.R. 911, 919 (S.D.N.Y. 1988) (noting that where there is no "unreasonable delay" and "the debtors are prejudiced by such delay then a motion is not considered untimely," id. at 920).  The timeliness requirement has been interpreted as being required so as to "avoid unnecessary delays and costs" and prevent the use of the withdrawal provision as a tool for delay.  U.S. v. Kaplan, 146 B.R. 500, 503 (D. Mass. 1992).  In a bankruptcy case, timeliness must be "measured by the stage of the proceedings in the bankruptcy court" because the "effective and timely resolution of bankruptcy proceedings requires great deference to considerations of punctuality."  Id. (denying movant's motion to withdraw the reference where motion was filed four months after commencement of an adversary proceeding, after the parties had conducted discovery and near the time that trial was scheduled to commence); In re Baldwin-United Corp., 57 B.R. 751, 755-56 (S.D. Ohio 1985) (finding untimely a withdrawal motion filed after the approval of a disclosure statement and the filing of a plan where movants filed their motion shortly after an unfavorable Second Circuit decision was rendered).

     In the present case, Movants filed their Withdrawal Motion three months after the Debtors filed their Objection to Movants' Conversion Damages Claims.  Had Movants truly thought that withdrawal was necessary, they could have requested such relief when the Debtors first filed their Objection to Movants' claims on July 6, 2007.  Instead, Movants waited until after the Bankruptcy Court entered the Order denying the Conversion Damages Claims, a determination unfavorable to Movants, to file their Withdrawal Motion.  Having sought relief initially from the Bankruptcy Court, Movants cannot now, *several months* after the Debtors first

filed their Objection, seek relief from this Court just because Movants do not agree with the Bankruptcy Court's decision. Under these circumstances, the Withdrawal Motion is clearly untimely and should be denied.

## **CONCLUSION**

For the foregoing reasons, the Equity Committee respectfully requests that this Court deny the Withdrawal Motion.

Dated: New York, New York
       October 12, 2007

**FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP**

 /s/ Gary Kaplan
Brad Eric Scheler (BS-8019)
Gary Kaplan (GK-4542)
Michael de Leeuw (MD-8479)
Adrian Feldman (AF-2478)
One New York Plaza
New York, NY 10004
Telephone: (212) 859-8000
Facsimile: (212) 859-4000

Counsel for the Official Committee of Equity Security Holders

599512