**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x
In re:                                              :
                                                    :  Chapter 11
CALPINE CORPORATION, et al.,                        :  Case No. 05-60200 (BRL)
                                                    :
        Debtors.                                  :
                                                    :
---------------------------------------------------------x
ARISTEIA CAPITAL, L.L.C.,                           :
AURELIUS CAPITAL MANAGEMENT,                        :
LP, DRAWBRIDGE SPECIAL                              :
OPPORTUNITIES ADVISORS LLC, ORE                     :
HILL HUB FUND LTD., NISSWA                          :
MASTER FUND LTD., PINES EDGE                        :
VALUE INVESTORS LTD., PINES EDGE                    :  Civil Case No. 07cv 8493
VALUE INVESTORS L.P., SILVER                        :
SANDS FUND LLC, STARK MASTER                        :
FUND LTD. AND 3V CAPITAL                            :
MANAGEMENT, LLC,                                    :
                                                    :
        Plaintiffs,                              :  **ORAL ARGUMENT REQUESTED**
                                                    :
    -against-                                      :
                                                    :
CALPINE CORPORATION AND ITS                         :
AFFILIATED DEBTORS AND DEBTORS                      :
IN POSSESSION,                                      :
                                                    :
        Defendant.                                :
---------------------------------------------------------x

**OMNIBUS REPLY OF THE 6% CONVERTIBLE**
**NOTEHOLDERS TO THE RESPONSES TO**
**THE MOTION TO WITHDRAW REFERENCE**
**WITH RESPECT TO DEBTORS' LIMITED OBJECTION**

Aristeia Capital, L.L.C., Aurelius Capital Management, LP, Drawbridge Special Opportunities Advisors LLC, Ore Hill Hub Fund Ltd., Nisswa Master Fund Ltd., Pines Edge Value Investors Ltd., Pines Edge Value Investors L.P., Silver Sands Fund LLC, Stark Master Fund Ltd. and 3V Capital Management, LLC (the "6% Convertible Noteholders") submit, by and through their undersigned counsel, this limited reply (the "Reply") in further support of their Motion to Withdraw the Reference with Regard to the Debtors'[1] Limited Objection and respectfully state as follows:

### REPLY

Contrary to the Respondents[2] assertions, the Motion was timely filed and is not an attempt at forum shopping. First, timeliness and causation are fundamentally intertwined. Both elements are required under 28 U.S.C. § 157(d). Timeliness cannot be determined without reference to the existence of "cause" for withdrawal of the reference. If the facts creating "cause" do not exist, no motion can be filed. Similarly, a motion cannot be untimely if it is filed shortly after the factual components constituting "cause" crystallize. In this case, cause arose when the Bankruptcy Court approved, on September 27, 2007, the Debtors' disclosure statement, premised on an extraordinarily fast-tracked confirmation schedule, which order set the confirmation hearing to begin on December 18, 2007. At the time of the filing by the 6% Convertible Noteholders of the appeal to this Court on August 14, 2007, the Debtors were still exploring other restructuring alternatives, such as a plan that cashed out all creditors or where a third-party investor

---

[1] All capitalized terms used herein but not otherwise defined have the meaning given such terms in the Motion.

[2] The Debtors, the Official Committee of Equity Security Holders ("Equity Committee"), and the Official Committee of Unsecured Creditors of Calpine Corporation, et al. are collectively referred to as the "Respondents."

1

funded the plan distributions in exchange for receiving the stock of a reorganized Calpine. Until September 2007, it was unclear whether the Debtors would pursue and solicit the waterfall plan that is now before the Bankruptcy Court, which contains (i) an aggressive reserve structure (which is, in fact, actually, an aggressive "no reserve" structure) designed to moot out this dispute, and (ii) a very expedited time-frame for confirmation.[3] Accordingly, filing the Motion on October 1, 2007 cannot be considered untimely as it was filed a mere two business days after the Bankruptcy Court's approval of the fast-track confirmation hearing of the Debtors' waterfall plan of reorganization.

Second, the 6% Convertible Noteholders are not forum-shopping. They are not trying to evade the Bankruptcy Court because of its decision on the Order. Indeed, if an appropriate reserve was set to satisfy the claims of the 6% Convertible Noteholders in the event they prevail on their liability and damage theories, they would not seek to withdraw the reference to the Bankruptcy Court.[4] It is the Debtors' actions, designed to set no reserve and moot this dispute, that impel this Motion. The 6% Convertible Noteholders filed this Motion for one reason only: to safeguard their fundamental right to appellate review.

I.  **Timeliness Must Be Measured From Bankruptcy Court's Approval of Debtors' Fast Track Confirmation Schedule**

Section 157(d) states that the "district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own or on timely motion of

---

[3] Moreover, even if the Debtors were correct that the Motion should have been filed in mid- to late-August, they cite no case for the proposition that one month's delay, standing alone, constitutes untimeliness.

[4] Moreover, in determining an appropriate reserve for the 6% Convertible Noteholders, the Court will become sufficiently familiar with the merits that it would be judicially inefficient to remand the case to the Bankruptcy Court because this Court and the Bankruptcy Court would performing overlapping reviews of the merits, but merely from different perspectives.

any party for cause shown." 28 U.S.C. § 157(d). Accordingly, whether a motion is "timely" must be considered in the context of the events giving rise to the "cause" for the relief requested. It is axiomatic that (i) if "cause" does not exist, then a motion to withdraw cannot be filed; and (ii) timeliness must be measured from when "cause" arose.

The "cause" for the Motion was the Bankruptcy Court's approval of the Debtors' fast-track confirmation schedule, which order was entered on September 27, 2007, coupled with the Debtors active pursuit of a waterfall plan with aggressive reserves (no reserve in the case of the 6% Convertible Noteholders). Only then did "cause" exist for the Motion to be filed as the schedule and lack of a reserve could have the effect of mooting this dispute and the 6% Convertible Noteholders filed the Motion two business days thereafter, on October 1, 2007.

All other events that have been suggested to be a proper measuring stick for determining whether the Motion is timely, including when the Limited Objection was filed, when the Bankruptcy Court's Order was entered, or when the Appeal was filed, all fail because "cause" for the Motion did not exist at those times. Indeed, as of August 14, 2007, the latest of these dates (i.e., when the Appeal was filed), the Debtors were actively contemplating other plans of reorganization, including a plan that cashed out all creditors or a third-party investor funding of the plan distribution. The Debtors represented to the Court that the threat of mootness was uncertain and that confirmation was many months, if not years, away. (See Mot. at 8.)

It is disingenuous for the Debtors now to suggest that the Court should measure the timeliness of the Motion from any time prior to the Bankruptcy Court's order setting the Debtors' fast-track confirmation schedule (which seeks to confirm a plan with

3

zero or inadequate reserves for disputed claims) when the Debtors themselves told this Court that confirmation was not imminent. The 6% Convertible Noteholders moved expeditiously once it became clear that the Debtors were not years away from confirmation, but weeks. Accordingly, the 6% Convertible Noteholders filing of the Motion on October 1, 2007, two business days after cause crystallized, cannot be considered untimely.[5]

## II. 6% Convertible Noteholders are Seeking to Preserve Fundamental Right to Appellate Review, Not Forum Shop

Courts have repeatedly held that "[t]he ability to review decisions of the lower courts is the guarantee of accountability in our judicial system" and post-confirmation appellate review is virtually meaningless as it becomes nearly impossible to fashion any form of relief. See, e.g., In re Adelphia Commc'ns Corp., 361 B.R. 337, 342, 352 (S.D.N.Y. 2007).[6] This Motion was filed as a result of the Debtors' deliberate and calculated conduct to moot any appeal by the 6% Convertible Noteholders, thereby, depriving them of their fundamental right to appellate review.

---

[5] Moreover, even to the extent that cause crystallized in mid- to late-August, courts have typically found that, where no prejudice occurs, a delay of one month cannot be considered untimely. See Interconnect Tel. Servs., Inc. v. Farren, 59 B.R. 397, 402 (S.D.N.Y. 1986) (holding motion to withdraw reference was timely even though filed one year after filing of complaint because no prejudice accrued because of delay); In re Kentile Floors, Inc., Bankr. No. 92B46466, Adv. No. 94-8518A, No. 95 Civ. 2470, 1995 WL 479512, *2 (S.D.N.Y. Aug. 10, 1995) ("Although nine months elapsed between the filing of the complaint and Congoleum's motion to withdraw the reference, the motion is timely."); see also In re Texaco Inc., 84 B.R. 911, 919-20 (S.D.N.Y. 1988) (holding motion to withdraw reference was timely even though filed two months after notice because no prejudice arose).

[6] See also, e.g., Lutin v. U.S. Bankr. Court (In re Advanced Mining Sys., Inc.), 173 B.R. 467, 468-69 (S.D.N.Y. 1994) (holding appellant will suffer irreparable harm through mooting of appeal where distribution occurs under chapter 11 plan, denying appellant any recovery); Contrarian Funds LLC v. Artex, LLC (In re WestPoint Stevens, Inc.), No. 06 Civ. 4128, 2007 WL 1346616, at *5 (S.D.N.Y. May 9, 2007) (holding that "prospect of mooting an appeal has been recognized as sufficient to support a finding of irreparable harm").

4

Through their consistent refusal to set an appropriate reserve for the 6% Convertible Noteholders' claim for breach of the Conversion Right and fast-tracked confirmation, the Debtors have, in a deliberate and calculated manner, attempted to deprive the 6% Convertible Noteholders from obtaining Article III review by mooting any appeal post-confirmation.[7]  Indeed, even the Equity Committee (one of the parties opposing the Motion and thereby aligned with the Debtors) recognizes the injustice in the Debtors' intention to deny parties meaningful appellate rights:

> The Equity Committee has very real concerns that the Debtors have created a process designed to ensure that all parties are denied effective appellate review.  The Debtors are seeking to have all disputes addressed at the end of the Chapter 11 cases, and they will then seek to have the Plan become effective without providing any party with an opportunity for appellate review.

(See Equity Comm. Resp. at 13.)  In such a circumstance, it is audacious for the Debtors to contend that the 6% Convertible Noteholders are forum shopping since it is the Debtors' steadfast refusal to set a reserve, coupled with their fast-tracked confirmation process, that have created the need for the 6% Convertible Noteholders to file this Motion to safeguard their fundamental right to appellate review.  In effect, this Motion is made in aid of the Court's appellate jurisdiction as (i) the Motion avoids any decision by this Court from being rendered meaningless and (ii) it protects the Court's jurisdiction over any future appeal from being eliminated by the Debtors' manipulative conduct (i.e., fast-track confirmation and refusal to set a reserve).

---

[7]  To add insult to injury, the Debtors, conversely, would have every right and unlimited time to appeal any unfavorable decision simply by reserving the awarded damages and not distributing anything to the 6% Convertible Noteholders.

5

## CONCLUSION

**WHEREFORE**, for the reasons stated in the Motion and this Reply, the 6% Convertible Noteholders respectfully request that the Court withdraw the reference and grant such other relief as is just.

Dated: October 19, 2007
       New York, New York

**MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP**

By: /s/   Matthew S. Barr
    Dennis F. Dunne (DD 7543)
    Matthew S. Barr (MB 9170)
    Andrew M. Leblanc (*pro hac vice*)
    One Chase Manhattan Plaza
    New York, New York  10005
    Telephone:  (212) 530-5000
    Facsimile:  (212) 530-5219

-and-

**STUTMAN, TREISTER & GLATT, P.C.**
Isaac M. Pachulski (*pro hac vice*)
Eric D. Winston (*pro hac vice*)
Whitman L. Holt (*pro hac vice*)
1901 Avenue of the Stars, 12th Floor
Los Angeles, California 90067
Telephone:  (310) 228-5600
Facsimile:  (310) 228-5788

Attorneys for each of Aristeia Capital, L.L.C., Aurelius Capital Management, LP, Drawbridge Special Opportunities Advisors LLC, Ore Hill Hub Fund Ltd., Nisswa Master Fund Ltd., Pines Edge Value Investors Ltd., Pines Edge Value Investors L.P., Silver Sands Fund LLC, Stark Master Fund Ltd. and 3V Capital Management, LLC